**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: ROBLOX CORPORATION CHILD SEXUAL EXPLOITATION AND ASSAULT LITIGATION | MDL Docket No. 3166 |

**DEFENDANTS ROBLOX CORPORATION AND DISCORD INC.'S OPPOSITION TO
MOTION FOR PARTIAL TRANSFER OF *SEITZ V. ROBLOX CORP. ET AL.*
TO MDL NO. 3166 PURSUANT TO 28 U.S.C. § 1407**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 1

    A.    The MDL Transfer Order.......................................................................... 1

    B.    The *Seitz* Action .................................................................................... 3

    C.    Plaintiff's Motion to Transfer ................................................................ 4

LEGAL STANDARD............................................................................................................ 4

ARGUMENT........................................................................................................................ 5

I.    THE *SEITZ* ACTION AND THE ROBLOX MDL CASES ARE FACTUALLY
DISTINCT. ................................................................................................................. 6

II.    TRANSFER OF *SEITZ* WILL NOT CREATE EFFICIENCIES IN THE MDL.............. 9

    A.    Any Discovery in *Seitz* Is Materially Different from Discovery in the
MDL........................................................................................................ 9

    B.    Transfer Will Not Streamline Proceedings. ........................................... 11

CONCLUSION.................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 21st Century Prods. Inc. Thrilsphere: Cont. Litig.*,
    448 F. Supp. 271 (J.P.M.L. 1978)......................................................................................10

*In re ABA L. Sch. Accreditation Litig.*,
    325 F. Supp. 3d 1377 (J.P.M.L. 2018)..............................................................................12

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
    2021 U.S. Dist. LEXIS 21511 (J.P.M.L. Feb. 4, 2021).....................................................9

*In re Cable Tie Patent Litig.*,
    487 F. Supp. 1351 (J.P.M.L. 1980).....................................................................................4

*Doe v. Grindr Inc.*,
    128 F.4th 1148 (9th Cir. 2025) .........................................................................................11

*In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*,
    446 F. Supp. 242 (J.P.M.L. 1978).....................................................................................11

*Gelboim v. Bank of Am. Corp.*,
    574 U.S. 405 (2015).............................................................................................................5

*In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*,
    899 F. Supp. 2d 1378 (J.P.M.L. 2012)..............................................................................10

*In re Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Prods. Liab.
    Litig.*,
    766 F. Supp. 3d 1328 (J.P.M.L. 2024)...........................................................................4, 8, 9

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
    515 U.S. 557 (1995)...........................................................................................................11

*In re Invokana (Canagliflozin) Prods. Liab. Litig.*,
    223 F. Supp. 3d 1345 (J.P.M.L. 2016)..............................................................................10

*In re Katz Interactive Call Processing Patent Litig.*,
    481 F. Supp. 2d 1353 (J.P.M.L. 2007)................................................................................9

*In re Medi-Cal Reimbursement Rate Reduction Litig*,
    652 F. Supp. 2d 1378 (J.P.M.L. 2009)..............................................................................12

*Smith v. California*,
    361 U.S. 147 (1959)...........................................................................................................11

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re TikTok, Inc., Minor Privacy Litig.*,
    776 F. Supp. 3d 1349 (J.P.M.L. 2025)...............................................................................8

**Statutes**

28 U.S.C. § 1407..............................................................................................................4, 5, 12

**Other Authorities**

Fed. J. Ctr., Manual for Complex Litig. (4th ed. 2004) ......................................................5

**INTRODUCTION**

*Seitz v. Roblox Corp.*, No. 2:25-cv-0166 (E.D. Ky.), is not like the others; it does not fall within the scope of this MDL. The Clerk of the Panel has already recognized as much in determining that *Seitz* "is not appropriate for inclusion in this MDL." Dkt. No. 117.[1] Plaintiff offers no viable basis to depart from that initial determination. When forming this MDL, the Panel expressed concern that it could "get out of control" if there was no "fence" around it. Dec. 4, 2025 Hr'g Tr. ("Tr.") at 6:24, 7:2, Dkt. No. 102. The Panel therefore cabined the proceedings to include cases where plaintiffs alleged sexual exploitation or abuse by individual perpetrators, where communications with those perpetrators allegedly began on Roblox and continued on a different platform. Transfer Order at 1–2, Dkt. No. 98. *Seitz* is not about alleged sexual exploitation or assault. As Plaintiff acknowledges, it is instead about "extremist violence and self-harm rather than sexual exploitation[.]" Mot. at 6, Dkt. No. 127-1. The Panel should deny transfer because *Seitz* does not share common questions of fact with the cases in this MDL. To do otherwise would remove the fence around this MDL, making it an unmanageable haven for any case alleging exposure to objectionable online content.

**BACKGROUND**

A.    **The MDL Transfer Order**

On September 18, 2025, Plaintiff's counsel moved to centralize 31 actions to the Northern District of California. Dkt. Nos. 1-1, 1-2. That original motion for transfer argued that coordination was necessary because the actions shared common questions of fact: the plaintiffs alleged that they communicated on Roblox with "child predators who were able to use the app to impersonate children," and "in many cases, that the interactions and abuse then spread to another app." Dkt.

---

[1] All docket citations are to entries in MDL No. 3166 unless otherwise noted.

No. 1-1 at 6, 11. On October 10, 2025, the Panel noticed the original transfer motion for hearing. Dkt. No. 36. Ten days later, on October 20, 2025, Plaintiff filed *Seitz*. In the nearly two months that elapsed between filing *Seitz* and the December 4, 2025 hearing on the original motion to transfer, Plaintiff's counsel never noticed the case as a potential tag-along action.

On December 12, 2025, the Panel created this MDL, centralizing 31 actions and 48 potentially related actions, and assigned it to Judge Seeborg in the Northern District of California. *See* Transfer Order. The Panel found centralization was appropriate because "common questions of fact," arose from the same core allegations: (i) that plaintiffs "(as minors) or their minor children were sexually exploited" by perpetrators they first communicated with on Roblox; (ii) that the perpetrators "then persuaded the minors to continue their interactions," including "exchang[ing] sexually explicit images" on other online platforms such as Discord, Snapchat, Instagram, text messages, or video calls; and (iii) resulting harm. *Id.* at 1. The Panel identified several "highly similar factual questions" about whether Defendants actually knew their platforms were being used **specifically by** "child predators to target and groom children" for sexual exploitation, whether Defendants' representations concerning child safety misrepresented existing facts, whether adopting additional safety features restricting user communications could have "prevented the sexual exploitation of children," and whether Defendants provided "adequate warnings about the risks of sexual exploitation" inherent in allowing children to communicate with other users through their services. *Id*. at 1–2. The Panel also ordered centralization to coordinate briefing across cross-cutting issues—including Section 230 immunity and the First Amendment; whether platforms owe a duty to protect users from the acts of third-party perpetrators; and whether their acts are superseding causes of plaintiffs' injuries. *Id.* at 2.

B.    The *Seitz* Action

On October 20, 2025, the *Seitz* action was filed in the Eastern District of Kentucky on behalf of Plaintiff Jamiee Seitz individually and as personal representative of the estate of her minor daughter, Audree Heine ("Heine"), against Roblox and Discord. Compl., *Seitz*, Dkt. No. 1. On December 2, 2025, Plaintiff filed an amended complaint adding defendants TikTok LLC, TikTok Inc., and ByteDance Inc. (collectively, "TikTok"), and other allegations. Am. Compl. ¶¶ 1, 3–5, *Seitz*, Dkt. No. 19.

The *Seitz* complaint alleges that Heine began using Roblox at age eight and used Discord and TikTok "shortly thereafter." *Id.* ¶ 216. True Crime Communities, or "TCCs" are online groups that discuss, and in some cases, glorify real-life violence and mass casualty events. *Id.* ¶¶ 5, 62–63. Certain subgroups within these TCCs romanticize or celebrate perpetrators of violence, fostering a "fan" culture. *See id.* The *Seitz* complaint alleges that Heine encountered TCC groups on Roblox "who glorified violence and espoused self-harm as a response to real-life hardship." *Id.* ¶¶ 62, 218–19. Plaintiff claims that TCC members "continued to exploit [Heine's] emotional vulnerabilities with violent rhetoric, manipulation and social pressure" on Discord and TikTok. *Id.* ¶ 219. In December 2024, when Heine was thirteen, she died by suicide in Boone County, Kentucky. *Id.* ¶ 215. Before her death, Heine "had been livestreaming her activities on TikTok." *Id.* ¶ 222. The complaint does not allege that Heine was sexually exploited or abused. *See generally* Am. Compl.

Plaintiff did not notice *Seitz* as a potential tag-along action until January 23, 2026. On February 2, 2026, the Clerk of the Panel summarily rejected the notice, concluding that *Seitz* "is not appropriate for inclusion in this MDL." Dkt. No. 117.

- 3 -

### C.    Plaintiff's Motion to Transfer

Plaintiff moves under 28 U.S.C. § 1407(a) to transfer the claims involving Roblox and Discord to this MDL and the claims involving TikTok to *In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, MDL No. 3047 (the "Social Media Addiction MDL"). Mot. at 1; *see also* Pl.'s Opp. at 4, MDL No. 3047 (J.P.M.L. Mar. 17, 2026), Dkt. No. 729.[2]

### LEGAL STANDARD

Multidistrict litigation is intended to "promote the just and efficient conduct of [civil] actions" "involving one or more common questions of fact" by placing them before a single court for coordinated pretrial proceedings. 28 U.S.C. § 1407(a). Under 28 U.S.C. § 1407(a), transfer to an MDL is proper when (1) the actions involve "one or more common questions of fact"; and (2) transfer will serve the "convenience of parties and witnesses" and "promote the just and efficient conduct of such actions." Plaintiff bears the burden of satisfying these requirements. *In re Cable Tie Patent Litig.*, 487 F. Supp. 1351, 1354 (J.P.M.L. 1980).

Where (as here) expanding an MDL risks making the litigation "procedurally and substantively unwieldy," the movant must demonstrate that the efficiency and convenience benefits of transfer outweigh the increased managerial complexity it would create. *In re Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Prods. Liab. Litig.*, 766 F. Supp. 3d 1328, 1329 (J.P.M.L. 2024). That inquiry focuses on consideration of the "eliminat[ion of] duplication in discovery, avoid[ance of] conflicting rulings and schedules, reduc[tion of] litigation cost[s], and

---

[2] Defendants do not oppose Plaintiff's request to transfer the claims against TikTok to the Social Media Addiction MDL. *See* Roblox's Non-Opp., MDL No. 3047 (J.P.M.L. Mar. 24, 2026), Dkt. No. 734. Should the case be transferred to any MDL, it should be transferred to the Social Media Addiction MDL.

[conservation of] the time and effort of the parties, the attorneys, the witnesses, and the courts." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 410 (2015) (quoting Fed. J. Ctr., Manual for Complex Litig. § 20.131 (4th ed. 2004)).

## ARGUMENT

The Panel should affirm the Clerk's determination that *Seitz* is "not appropriate for inclusion" in this MDL and deny this motion to transfer. The Panel already cabined this MDL to claims arising from the alleged sexual exploitation of a minor by an individual predator, where they first communicated on Roblox and then moved their communications to another platform or platforms. By contrast, *Seitz* alleges that a minor was exposed to third-party content that glorified extremist violence and self-harm, ultimately contributing to her death by suicide. *Seitz* does not share common questions of fact with the cases in this MDL. Moreover, Plaintiff has not shown that transfer would promote efficiencies. Because *Seitz* rests on entirely different allegations, it would require its own discovery track, its own expert disciplines, and its own causation framework. Rather than advancing coordinated pretrial proceedings, inclusion of *Seitz* would burden the transferee court with a fundamentally incompatible case, dismantle the fence the Panel deliberately imposed, and distort the streamlined pretrial management the Panel sought to achieve in the first place.

Plaintiff's proposal, which would split her claims arising from the same events and transfer one set to the Social Media Addiction MDL and another set to this MDL, would exacerbate the disruption of streamlined proceedings. This proposed splintering of a single action, injecting a subset of claims into two different MDLs, contradicts the purposes of centralization, diminishes judicial economy, and risks inconsistent judgments across duplicative proceedings. Allowing a plaintiff to litigate the same alleged harm across two different MDLs undermines the central purpose of 28 U.S.C. § 1407.

## I. THE *SEITZ* ACTION AND THE ROBLOX MDL CASES ARE FACTUALLY DISTINCT.

*Seitz* does not share "common questions of fact" with the cases in this MDL. According to Plaintiff, "*Seitz* focuses on grooming toward extremist violence and self-harm ***rather than*** sexual exploitation." Mot. at 6 (emphasis added). Plaintiff alleges, for example, that Heine was exposed to "homophobic and violent content," Am. Compl. ¶ 220, and that her interactions with groups that promoted violence and self-harm "led to a particular fixation on the Columbine shooters" and augmented "feelings of isolation and despair," *id*. ¶¶ 62, 218, 220. Plaintiff also alleges that Heine "recorded a countdown in her journal" and was "livestreaming her activities on TikTok" leading up to her death. *Id.* ¶¶ 220, 222.[3]

In contrast, none of the complaints in the MDL resembles *Seitz*, as the MDL cases all include allegations of sexual exploitation by an individual perpetrator.[4] One of the MDL's "exemplar complaint[s]," Mot. at 4 n.1, alleges that a man posed as a thirteen-year-old on Roblox, communicated with and groomed a teenage girl on Roblox and Discord, and then sent the girl "graphic messages describing sexual acts" and "sexually explicit images of himself." Dkt. No. 127-5 ¶¶ 221–22. The complaint also alleges that the perpetrator arranged to meet the girl in person and attempted to rape her. *Id.* ¶ 224. Law enforcement intervened during the encounter and arrested the perpetrator. *Id. Seitz* does not allege that Heine was sexually exploited, subject to inappropriate sexual content, or otherwise sexually abused. In short, the MDL cases and *Seitz* involve completely distinct types of actors, harms, and causation theories.

---

[3] Severing Plaintiff's claims against TikTok would not bring *Seitz* any closer to the factual core of the cases in this MDL. Even without the TikTok claims, the remaining allegations center on violent radicalization and self-harm, not allegations of sexual abuse.

[4] Although some complaints in the MDL include allegations of self-harm, suicide, and/or attempted suicide, they all allegedly resulted from purported instances of sexual exploitation.

Despite these fundamental differences, Plaintiff argues that consolidation is appropriate because *Seitz* and the MDL cases involve "the same alleged platform deficiencies[.]" Mot. at 6. Not so. *Seitz* concerns the platforms' alleged failure to filter or remove violent and extremist content promoted by TCCs. *See* Am. Compl. ¶¶ 61, 113 (allegations of "violent simulated shooting games" on Roblox); *id.* ¶¶ 150–52 (alleging that Discord "maintains an environment" where third-party users pressure children toward "violence against themselves and others"); *id.* ¶¶ 199–202 (alleging that TikTok is "home to content promoting extremist ideologies," including content that "glorifies mass shooters"). The MDL, on the other hand, concerns the platforms' alleged failure to filter or remove sexually-oriented communications and —for those platforms that allow image or video sharing—alleged child sexual abuse material ("CSAM"). *See* Dkt. No. 127-5 ¶ 128 (alleging Roblox failed to adequately block and remove sexualized content); *id.* ¶ 167 (alleging Discord failed to adequately monitor and remove sexually explicit communications and CSAM). Indeed, at the hearing on the original motion to transfer, Plaintiff's counsel confirmed this distinction, defining the common thread among the cases they sought to centralize as follows: "[a]ll involve children who were sexually assaulted or exploited." Tr. at 3:8–11. *Seitz* does not.

The Panel recognized the importance of imposing a limiting factor on this MDL, expressing concerns that it could "get out of control" and "include everybody . . . who was ever the victim of [a] predator over the Internet[.]" Tr. at 6:24, 7:3–4. In response, Plaintiff's counsel described the cases they sought to centralize as ones "involv[ing] children who were sexually assaulted or exploited" *and* their initial communications with alleged perpetrators happened "on Roblox." *Id.* at 3:10–11, 3:22–24. Consistent with that representation, the Panel issued a transfer order establishing a clear "fence" around the MDL: it would encompass cases involving alleged sexual exploitation of a minor that allegedly began on Roblox and later shifted to another platform

such as Discord, Snapchat, Instagram, texting, or calling on a phone. *Id.*; *see also* Transfer Order at 1. As such, each common issue of fact cited by the Panel necessarily related to alleged "sexual exploitation of children." Transfer Order at 1–2.

The facts and allegations in *Seitz* fall well outside the fence the Panel constructed. Plaintiff concedes as much, acknowledging that "*Seitz* focuses on grooming toward ***extremist violence and self-harm*** rather than sexual exploitation." Mot. at 6 (emphasis added). And while Plaintiff attempts to create a kernel of similarity between *Seitz* and the cases in the MDL by using the term "grooming" in an inapposite context, *id.*, this does not impose any discernible limiting principle. "Grooming" as alleged in the MDL cases refers to grooming of an identifiable child by an individual perpetrator for sexual exploitation. In *Seitz*, the alleged "grooming" is exposure to ideological content by diffuse online groups. Conflating this would strip the MDL of any meaningful boundary, making it unmanageable.

The Panel has similarly denied transfer motions in other MDLs where, as here, the cases stem from fundamentally distinct factual allegations, despite asserting similar claims against the same defendants. For example, in *In re TikTok, Inc., Minor Privacy Litigation*, plaintiffs in twenty cases alleging that TikTok unlawfully failed to disclose that it collected minors' personal information sought to have their actions included in the Social Media Addiction MDL, where TikTok is a defendant. 776 F. Supp. 3d 1349, 1350–51 (J.P.M.L. 2025). The Panel recognized that the Social Media Addiction MDL asserted similar claims concerning platforms' age verification procedures, but nonetheless denied the transfer motion because the MDL had "been defined by allegations that defendants' social media platforms are designed to be addictive to adolescent users," whereas the privacy cases lacked "addiction-related allegations." *Id.* at 1351. Moreover, in *In re Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation*, the

Panel denied a motion to expand an MDL centered on gastrointestinal injuries to include claims for deep vein thrombosis, finding that the assertion of a shared "mechanism of harm" was "superficial at best" and that expanding the MDL to encompass a new category of injury would render the litigation "procedurally and substantively unwieldy." 766 F. Supp. 3d at 1329. That same logic applies here.

Plaintiff's authorities do not suggest otherwise. *In re Katz Interactive Call Processing Patent Litigation*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007), held only that transfer does not require complete identity of issues; but in that MDL, every action alleged infringement of the same patent family. And in *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2873, 2021 U.S. Dist. LEXIS 21511 (J.P.M.L. Feb. 4, 2021), the Panel permitted consolidation because both sets of cases involved the same chemicals, the same manufacturers' knowledge of those specific dangers, and the same alleged concealment. If anything, these decisions bolster the conclusion that this MDL should not include a factually distinct case like *Seitz*.

## II. TRANSFER OF *SEITZ* WILL NOT CREATE EFFICIENCIES IN THE MDL.

### A. Any Discovery in *Seitz* Is Materially Different from Discovery in the MDL.

*Seitz* and the MDL cases rest on different factual predicates and causation theories. A case involving "extremist violence and self-harm" and another involving "sexual exploitation" will require distinct evidence, and Plaintiff's invocation of "the same basic theories of liability" does not change that.

As explained in the Transfer Order, any discovery in the MDL will focus on the defendant platforms' alleged knowledge of perpetrators using their platforms to target and groom children for sexual exploitation, how those perpetrators allegedly exploited specific platform features to contact minors, what policies governed these kinds of communications, and what technical interventions "would have prevented the sexual exploitation of children." Transfer Order at 1–2.

*Seitz*, on the other hand, would consider the defendant platforms' moderation of violent and extremist content, the platform mechanics that allegedly enabled radicalization, and the policies governing violent-content moderation. *See, e.g.*, Am. Compl. ¶ 61 (alleging that Roblox's "algorithm" returns search results for "violent games" based on certain search terms); *id.* ¶ 150 (alleging that third-party users on Discord cause children to direct "violence against themselves and others through coercion, emotional manipulation, and social pressure," despite Discord's "zero tolerance for conduct that endangers children"); *id.* ¶ 192 (alleging that, despite TikTok's assurances that it "prioritizes a safe and child-friendly user environment," it exposes children to "content that promotes, glorifies, and encourages harm to themselves and others"). Each inquiry will involve different custodians, expert disciplines, and different causation theories.

Importing *Seitz* into this MDL would force the transferee court to manage two incompatible discovery tracks—one focused on alleged sexual predation, and the other on violent radicalization—with no meaningful overlap. Far from promoting efficiency, consolidation would burden the MDL court with the "managerial complexities" the Panel rightly seeks to avoid, *In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012), and would "prolong pretrial proceedings" rather than streamline them, *In re Invokana (Canagliflozin) Prods. Liab. Litig.*, 223 F. Supp. 3d 1345, 1348 (J.P.M.L. 2016) (denying centralization in part because of "the possible need for separate discovery and motion tracks, as well as the need for additional bellwether trials").

Whatever limited overlap may exist in executive and employee testimony about generic platform-wide safety representations could be addressed through informal coordination measures, which would "minimize the possibility of duplicative discovery" far more surgically than formal centralization. *In re 21st Century Prods. Inc. Thrilsphere: Cont. Litig.*, 448 F. Supp. 271, 273

(J.P.M.L. 1978). The merits discovery in each proceeding will be entirely different. The MDL cases will require testimony from personnel responsible for detecting and preventing sexual exploitation and reporting CSAM. *Seitz* will require testimony from personnel responsible for content moderation of violent and extremist material, algorithmic recommendations of community-generated content (a feature that Discord does not even offer), and enforcement of policies governing groups like the TCCs. The parties could cross-notice depositions, address discovery inefficiencies through stipulations, or seek orders from the involved courts directing pretrial coordination. *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978) (noting parties).

### B.    Transfer Will Not Streamline Proceedings.

The significant factual differences between *Seitz* and the MDL cases would also undermine the Court's ability to issue pretrial rulings that apply across MDL cases. It is not accurate, as Plaintiff argues, that there are "recurring legal issues" between *Seitz* and the MDL cases simply because the matters may implicate similar defenses. Mot. at 7. Plaintiff essentially urges the Court to zoom out too far, and presume that *Seitz* and the MDL cases must be the same because they both rest on claims that are barred by Section 230 and the First Amendment. *Id.*; *id.* at 10. But the application of these threshold immunities (e.g., Section 230 or the First Amendment) necessarily depends on the nature of the underlying allegations. *See, e.g.*, *Doe v. Grindr Inc.*, 128 F.4th 1148, 1153 (9th Cir. 2025) (Section 230 immunity requires claim-specific analysis as to whether "discharging the alleged duty would require" moderation of third-party content); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 574 (1995) (First Amendment protection against tort claims based on selection of third-party content requires analyzing whether selection was an editorial choice); *Smith v. California*, 361 U.S. 147, 153 (1959) (First Amendment shields intermediaries from liability for disseminating specific third-party content absent proof they know

what made that specific content unlawful). Moreover, Plaintiffs advocate moving only **part** of *Seitz* to this MDL, and the rest to the Social Media Addiction MDL, which would complicate, not streamline, the proceedings.

That the outcome of two legal analyses may be the same—dismissal—does not justify transfer. The Panel has repeatedly held that "[c]ommon legal questions are insufficient to satisfy Section 1407's requirement of common factual questions." *In re ABA L. Sch. Accreditation Litig.*, 325 F. Supp. 3d 1377, 1378–79 (J.P.M.L. 2018). And, without more, "'merely . . . avoid[ing] different federal courts having to decide the same issue" does not warrant transfer. *Id.* (quoting *In re: Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378, 1378 (J.P.M.L. 2009)) (citation modified).

*Seitz* does not belong in this MDL because it does not concern alleged child sexual exploitation. The Clerk of the Panel already determined that *Seitz* "is not appropriate for inclusion in this MDL," Dkt. No. 117, and nothing in Plaintiff's motion warrants revisiting that conclusion.

## CONCLUSION

For these reasons, the Panel should deny Plaintiff's motion for transfer.

Dated:  April 7, 2026

Respectfully submitted,

**COOLEY LLP**

*/s/ Tiana Demas*

Tiana Demas
110 N. Wacker Drive, Suite 4200
Chicago, IL  60606
Telephone: (312) 881-6500
Facsimile:  (312) 881-6598
Email: tdemas@cooley.com

*Counsel for Defendant Roblox Corporation*

**DAVIS WRIGHT TREMAINE LLP**

*/s/ Ambika Kumar (with consent)*

Ambika Kumar
920 Fifth Avenue, #3300
Seattle, WA 98104
Telephone: (206) 757-8030
Facsimile: (206) 757-7700
Email: ambikakumar@dwt.com

*Counsel for Defendant Discord, Inc.*

- 13 -